<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **IRIS L. CUADRA,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 09-4946 (JLL)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVISION COMMUNICATIONS,** | : | |
| **INC., ET AL.,** | : | **OPINION** |
| | : | |
| **Defendants.** | : | |
| | : | |

**HAMMER, United States Magistrate Judge**

**I.    INTRODUCTION**

This matter comes before the Court by the plaintiff counsel's motion to withdraw as counsel.  Oral argument was held on March 12, 2012.  For the reasons set forth herein, the motion is denied.

**II.    BACKGROUND**

**A. Brief Factual Recitation**

The parties are familiar with the facts and the Court mentions herein only those necessary to resolve this application.  For convenience, the Court refers to, and incorporates by reference, previous factual recitations set forth in <u>Cuadra v. Univision Communications, Inc.</u>, Civ. No. 09-4946, 2011 WL 3859727 (D.N.J. Sept. 1, 2011).

In 2005, plaintiff Iris Cuadra, a Hispanic-American female, began working as a sales assistant for defendant Univision Communications, Inc., a Spanish-language multimedia

1

company.  Id. at *1.  In early 2007, Cuadra accepted an assistant's position with defendant John DeSimone, a Univision executive.  Id.  Ms. Cuadra alleges that Mr. DeSimone sexually harassed her repeatedly and discriminated against her.  Id. at *1–2.  In May 2008, Ms. Cuadra filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging continued harassment based on her gender and Nicaraguan national origin.  Id. at *3.

In February 2009, Ms. Cuadra and four other employees were laid off, allegedly as a result of a reduction in force.  Id. at *4.  In May 2009, Ms. Cuadra filed a second EEOC complaint alleging that she was terminated as another instance of retaliation for her prior claims of discrimination and harassment.  (See Mark Privileged Decl. ¶¶ 4, 19, Jan. 11, 2012, ECF No. 80; Opp'n Br. at 3, Jan. 24, 2012, ECF No. 84.)

In June 2009, the EEOC issued Ms. Cuadra a right-to-sue letter regarding her first EEOC complaint (from May 2008) alleging retaliation and discrimination based on gender and national origin.  (See Compl. at 2, ¶ 6, Sept. 25, 2009, ECF No. 1.)

### B. Procedural History

On September 25, 2009, Ms. Cuadra filed a Complaint against Univision and Mr. DeSimone alleging Title VII claims for gender and nation origin discrimination, retaliation, hostile work environment, and intentional infliction of emotional distress.  (Compl. ¶¶ 40–61.)  Importantly, the factual allegations of the Complaint also mentioned her termination.  (See, e.g., id. ¶¶ 33, 36.)

On January 15, 2010, the Court held a scheduling conference and issued a pretrial scheduling order.  (Pretr. Sched. Order, Jan. 28, 2010, ECF No. 18.)  Fact discovery ended on September 15, 2010.  (See Order, July 23, 2010, ECF No. 27; Order, Aug. 5, 2010, ECF No. 29;

Order, Nov. 1, 2010, ECF No. 30.)

On January 14, 2011, the defendants moved for summary judgment. (Summ. J. Mot., Jan. 14, 2011, ECF Nos. 31–34.) The parties filed opposition and reply briefs. (See Pl.'s Summ. J. Resp. Submissions, Feb. 7–8, 2012, ECF Nos. 39–40; Defs.' Summ. J. Reply Submissions, Feb. 14, 2011, ECF Nos. 41–43.) The Court scheduled oral argument. (See Order, Mar. 10, 2011, ECF No. 44; Order, Mar. 11, 2011, ECF No. 46; Text Order, Mar. 21, 2011, ECF No. 47.)

On March 4, 2011, Ms. Cuadra notified her counsel that she had received her second right-to-sue letter (from May 2009) and that she would be seeking new counsel to assist her on those claims in a separate lawsuit. (See Mark Non-Privileged Decl. ¶ 4, Jan. 11, 2012, ECF No. 80; Mark Privileged Decl. ¶ 17.)[1]

On March 31, 2011, the Court held oral argument on the summary judgment motion. Ms. Cuadra's counsel advised the Court that Ms. Cuadra had "unequivocally" instructed him that his firm would not handle litigation involving the second right-to-sue letter and that she was actively seeking other counsel to do so. (See Mark Privileged Decl. ¶ 19.) Thereafter, the Court directed

---

[1] Ms. Cuadra's counsel seeks to seal paragraph seventeen from this declaration, as well other materials supporting this motion, on the basis that they contain privileged communications between Ms. Cuadra and her counsel. As explained below, the Court finds that some of these proposed redactions contain information already noted in open court and thus not subject to sealing. Indeed, the fact of Ms. Cuadra's notification to her counsel on March 4, 2011, was shared with the Court during oral argument on March 31, 2011. (See, e.g., Dec. 13, 2011 H'ring 3:24–4:10, filed Jan. 3, 2012, ECF No. 77.)

In support of his application to withdraw, Ms. Cuadra's counsel filed three different declarations: one to support his motion to seal and two to support his motion to withdraw. The Court refers to these different declarations as follows: (1) Mark Sealing Declaration (i.e., supporting plaintiff's motion to seal); (2) Mark Privileged Declaration; (3) Mark Unprivileged Declaration. Notably, the Mark Privileged Declaration contains portions that counsel seeks to seal, and portions for which no sealing is sought. Unless the Court specifies otherwise, citations to the Privileged Declaration are citations to the portions that the plaintiff's counsel does not seek to seal.

Ms. Cuadra to submit, by April 7, 2011, a list that explicitly stated each of her claims in this

litigation, and further directed that "[a]ny claim to which the aforesaid information is not

provided will be deemed abandoned and will be dismissed with prejudice." (Order, Mar. 31,

2011, ECF No. 49.)  The Order also required Ms. Cuadra to inform the Court, by April 14, 2011,

how she intended to proceed regarding the second right-to-sue letter.  (Id.)

On April 7, 2011, Ms. Cuadra's counsel filed a submission that did not strictly conform

to the directives of the March 31, 2011 Order; rather, it was simply a new opposition brief.  (New

Opp'n Submissions, Apr. 7, 2011, ECF Nos. 50–58.)  In both submissions, however, Ms.

Cuadra's counsel argued that her termination supported her retaliation claim.  (See, e.g., Opp'n

Br. at 14–17, Feb. 8, 2011, ECF No. 40; New Opp'n Br. at 34–37, Apr. 7, 2011, ECF No. 56.)

The defendants filed submissions in response.  (See Defs.' Objection & Resps. to Pl.'s Counter-

statement, Apr. 14, 2011, ECF No. 61; Second Supplemental Chase Aff., Apr. 14, 2011, ECF

No. 62.)

On April 14, 2011, Ms. Cuadra's counsel filed a letter stating that Ms. Cuadra had not

further notified counsel of her intention to retain new counsel for her second EEOC matter,

namely, the termination claims, and requested more time to report such information to the Court.

(Pl.'s Counsel's Letter, Apr. 14, 2011, ECF No. 60.)  The defendants objected to the extension,

arguing that the Complaint clearly included factual allegations of the termination, discovery had

proceeded as if those claims were in the case, and the opposition brief had used facts regarding

termination to oppose summary judgment.  (Def.'s Letter, Apr. 14, 2011, ECF No. 63.)

On September 1, 2011, the Court granted the defendant's motion for summary judgment

on plaintiff's claim of intentional infliction of emotional distress, and denied the motion on

plaintiff's claims for hostile work environment, discrimination, and retaliation.  (Order, Sept. 1, 2011, ECF No. 68.)  In pertinent part, the Court incorporated Ms. Cuadra's termination facts as part of its opinion denying summary judgment on her discrimination and retaliation claims.  See Cuadra, 2011 WL 3859727, at *8.

On November 29, 2011, the Court held an unsuccessful settlement conference.  As she later recounted in open court, Ms. Cuadra reiterated at this settlement conference that her counsel would not be representing her on any termination claim.  (See Dec. 13, 2011 H'ring 4:16–5:1, filed Jan. 3, 2012, ECF No. 77.)  The Court directed counsel and Ms. Cuadra to reappear in person on December 13, 2011, and required Ms. Cuadra to indicate at that time her intention as to any claims stemming from her second right-to-sue letter, namely, her termination claims.  (Order, Nov. 29, 2011, ECF No. 70.)  The Court also scheduled a final pretrial conference for mid-February 2012.  (Id.)

On December 13, 2011, the Court held an in-person conference on the record.  During the conference, Ms. Cuadra wanted to speak directly to the Court regarding her claims from her second right-to-sue letter.  (Dec. 13, 2011 H'rng Tr. 3:16–20).  She told the Court that the present case does not involve termination and that her counsel was not representing her on that matter.  (Id. at 4:23–5:5.)  The Court engaged in a dialogue with Ms. Cuadra to ensure she understood that there would be legal implications of such a decision.  (See id. at 5:6–8:4.)  At the end of that dialogue, the Court asked:

> Okay.  And so with -- all that in mind, Ms. Cuadra, is it still your position that you're not going to seek in this case any claims regarding your termination by Univision?
>
> Ms. Cuadra: That's correct, Your Honor.

(Id. at 8:5–9.)  Mindful of the mid-February final pretrial conference, counsel and the Court then attempted to clarify the legal implications of Ms. Cuadra's decision not to pursue claims stemming from her second right-to-sue letter, namely, the scope of Ms. Cuadra's claims for presenting evidence at trial in this case.  (See, e.g., id. at 8:21–9:11, 11:23–12:6, 13:13–14:22.) Ms. Cuadra's counsel had no specific objections to the evidentiary parameters proposed in court but wanted more time to review the file again and prepare a consent order.  (See, e.g., id. at 16:14–17:2,  27:13–16.)  Over the objections of the defendants (e.g., id. at 17:6–19, 23:14–18) and the Court's reticence to further prolong this case (e.g., id. at 17:20–18:20, 21:15–22:2), the Court gave the parties one week to confer and provide the Court with a consent order.  (Id. at 27:17–22.)  On December 20, 2011, however, the parties advised the Court that they could not agree on a consent order without conferring with the Court.  (Defs.' Letter, Dec. 20, 2011, ECF No. 73.)

On December 22, 2011, the Court held a telephone conference on the record, and reiterated that the consent order was a means to delineate the scope of the evidence to be presented at trial, in anticipation of the preparation of the Final Pretrial Order.  Counsel represented that the parties largely agreed to the terms of a proposed consent order and only disputed how to characterize the eliminated termination claims, that is, whether the plaintiff had withdrawn the termination claims or whether such claims had never existed in this case.  Ms. Cuadra's counsel represented that Ms. Cuadra wanted language indicating that the termination claims were never in the case.  At one point, Ms. Cuadra's counsel asserted that a termination claim was never pled in the Complaint.  The Court questioned Ms. Cuadra's counsel on this assertion and mentioned, among things, (a) the broadly worded Complaint that incorporated the

fact of her termination into the retaliation claim; (b) the Court's dialogue with Ms. Cuadra informing her that her decision not to pursue a termination claim in this case carried legal consequences, and (c) the fact that Ms. Cuadra has to live with the consequences of her decision. After this, Ms. Cuadra's counsel stated to the Court, "Judge, I understand absolutely what you are saying and I am prepared to proceed with whatever happens." The Court then mentioned the possibility of motion practice to resolve the issue. At that time, Ms. Cuadra's counsel told the Court that he still believed the proposed consent order was possible, that he had not been able to contact Ms. Cuadra since the December 13, 2011 conference, and that he needed another day to contact her. The Court ordered Ms. Cuadra and her counsel to confer about the proposed consent order, directed that a failure to do so will be deemed a waiver of objections to the proposed order, and scheduled a phone conference a week later. (Order, Dec. 22, 2011, ECF No. 75.)

On December 28, 2011, the Court held another phone conference, and Ms. Cuadra's counsel stated, for the first time, that he wanted to move to withdraw as her counsel. (Order, Dec. 28, 2011, ECF No. 76.) The Court set a briefing schedule. (Id.) On January 11, 2012, Ms. Cuadra's counsel moved to withdraw as her counsel with redacted submissions in support. (Mot. to Withdraw, Jan. 11, 2012, ECF No. 80.) On January 18, 2012, the Court held a telephone conference on the record regarding these redacted materials, and defense counsel did not object to those materials being sealed based on the representation that those materials consist of attorney-client communications. On January 24, 2012, the defendants submitted its opposition to the motion. (Opp'n Br., Jan. 24, 2012, ECF No. 84; Chase Decl., Jan. 24, 2012, ECF No. 85.)

On March 12, 2012, the Court held a hearing on the motion to withdraw. Ms. Cuadra was present and addressed the Court.

III.   **DISCUSSION**

**A. RPC 1.16**

"When an attorney agrees to undertake the representation of a client, he or she is under an obligation to see the work through to completion." Haines v. Liggett Group, Inc., 814 F. Supp. 414, 424 (D.N.J. 1993); accord Kriegsman v. Kriegsman, 150 N.J. Super. 474, 479 (App. Div. 1977).  Once representation begins, an attorney "is not at liberty to abandon the case without justifiable or reasonable cause, or the consent of its client." Kriegsman, 150 N.J. Super at 479.

Under Local Civil Rule 102.1, "[u]nless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court." L. Civ. R. 102.1, accord RPC 1.16(c).  Also, under Local Civil Rule 103.1, the New Jersey Rules of Professional Conduct (RPC) govern the conduct of attorneys before the District of New Jersey.  L. Civ. R. 103.1(a); accord In re Congoleum Corp., 426 F.3d 675, 687 (3d Cir. 2005) (citing United States v. Balter, 91 F.3d 427, 435 (3d Cir. 1996)).  The Court generally looks to New Jersey state court for interpretation of the RPCs and modifies as necessary by federal law.  Wyeth v. Abbott Labs., 692 F. Supp. 2d 453, 455–56 (D.N.J. 2010) (citing FMC Corp. v. Guthery, Civ. No. 07-5409, 2009 WL 485280, at *3 (D.N.J. Feb. 25, 2009)); accord In re Congoleum Corp., 426 F.3d at 687.

RPC 1.16 governs when an attorney may withdraw from representation of a client.  Under some circumstances, an attorney must seek withdrawal.  Under subsection (a), an attorney must withdraw if, in pertinent part:

> (1) the representation will result in violation of the Rules of Professional Conduct or other law; [or]
> . . . .
> (3) the lawyer is discharged.

8

RPC 1.16(a).  Under other circumstances, withdrawal is permissive but not mandatory.  Under subsection (b), an attorney may withdraw if, in pertinent part:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
> . . . .
> (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;
> . . . .
> (7) other good cause for withdrawal exists.

RPC 1.16(b).  Notwithstanding the existence of a mandatory or permissive reason supporting withdrawal, a lawyer shall continue representation when ordered to do so by the Court.  RPC 1.16(c).  Cf. Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 217–220 (1988) (requiring representation to continue notwithstanding a conflict of interest with client).  "The theory behind this provision is that, even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency."  Haines, 814 F. Supp. at 423.

Whether or not to grant withdrawal is within the discretion of a court.  Id. at 422; accord In re Simon, 206 N.J. 306, 321 n.8 (2011) (citing Jacobs v. Pendel, 98 N.J. Super. 252, 255 (App. Div. 1967)).  Consistent with RPC 1.16, the Court considers four criteria:

> (1) the reasons why withdrawal is sought,
> (2) the prejudice withdrawal may cause to litigants,
> (3) the harm withdrawal might cause to the administration of justice and
> (4) the degree to which withdrawal will delay resolution of the case.

Haines, 814 F. Supp. at 423; see also U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc. v. Healthcare Rehab Sys., Inc., 994 F. Supp. 244, 252–53 (D.N.J. 1997); Rusinow v. Kamara, 920 F. Supp. 69, 71 (D.N.J. 1996); accord Kriegsman, 150 N.J. Super at 479–80.

**B. Reasons for Withdrawal**

Here, Ms. Cuadra's counsel argues that he must withdraw under RPC 1.16(a)(1) and (a)(3), and that he may withdraw under RPC 1.16(b)(1), (b)(4), and (b)(7).  Many of the reasons overlap, and therefore the Court will initially review the reasons for mandatory withdrawal and then proceed to the reasons for permissive withdrawal.

**1. Mandatory Withdrawal**

Regarding mandatory withdrawal, Ms. Cuadra's counsel first argues that, under RPC 1.16(a)(1), his continued representation will result in a violation of the RPCs.  Without revealing attorney-client communications, Ms. Cuadra's counsel states that he "cannot represent to Your Honor or any Court, that the representations that Ms. Cuadra now asks of me, can be made without jeopardizing my own ethics, morals and reputation before the Court."  (Mark Privileged Decl. ¶ 43; see also Withdrawal Br. at 3.)

The Court is mindful of the difficult positions in which clients sometimes place their lawyers.  However, the record and argument before the Court does not demonstrate that counsel will be forced to violate the RPCs.  For example, continued representation in this case will not result in a conflict of interest, see RPC 1.7, 1.8, or require counsel to become a witness.  See RPC 3.7.  Also, while an attorney must advocate on behalf of his client, the attorney cannot violate his duty of candor to the Court.  RPC 3.3.  Notably, the RPCs provide a framework whereby counsel can be truthful to the Court while still being an advocate for his client.  Under RPC 3.3, "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal [or] fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting an illegal, criminal or fraudulent act by the client."  RPC 3.3(a)(1)–(2).  Also, "[a]

10

lawyer may refuse to offer evidence that the lawyer reasonably believes is false."  RPC 3.3(c).  This duty of candor supercedes the duty of confidentiality to the client.  See RPC 3.3(b).  And the duty of confidentiality is explicitly balanced to permit a lawyer to reveal confidential information to the extent necessary to prevent a fraud on the Court.  See RPC 1.6(b).  Lastly, when asserting a position or a claim, RPC 3.1 requires attorneys to "know[] or reasonably believe[] that there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law, or the establishment of new law."  RPC 3.1.

Furthermore, Ms. Cuadra's counsel's concerns are largely, if not completely, moot.  The open record on this motion is extensive enough to fairly say that the parties are aware that Ms. Cuadra's decision concerning her termination claims is at least partly the cause of this present motion.  (See generally Tel. Conf., Dec. 28, 2011 (plaintiff's counsel stating "It really stems from what she's asking me to do in so far as the termination and the retaliation claims . . . that have been part of this ongoing issue for the last . . . couple months"); Mark Non-Privileged Decl. ¶¶ 2, 4–8; Mark Privilege Decl. ¶¶ 4–5, 10, 19, 30–35, 37, 40, 43, 46–47.)  Indeed, many months were spent resolving this issue, and the motion to withdraw came on the heels of the parties' failure to reach a consent order derived from Ms. Cuadra's decision.  But this issue is resolved, at least for purposes of this litigation.  Ms. Cuadra has expressly stated in open court that this case does not now include claims embodied in her second EEOC complaint, namely, any claim based on termination.  (See Dec. 13, 2011 H'rng Tr. 4:23–8:9; see also Mar. 12, 2012 H'rng.)[2]  Given this

_____

[2] The Court notes that Ms. Cuadra's representation during the March 12, 2012 hearing came amidst the sealed portion of the record.  However, this specific representation is nearly identical to the representation made by Ms. Cuadra in open court during the December 13, 2011 hearing.  (Dec. 13, 2011

binding legal position, the Court sees no reason why (or even how) any counsel of Ms. Cuadra's could present a good faith argument contrary to the parameters set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or other law.  See RPC 3.1.  Accordingly, the Court does not find that counsel will be forced to violate any RPC before this tribunal.

Counsel's second argument for mandatory withdrawal is that, under RPC 1.16(a)(3), Ms. Cuadra has discharged his firm from representing her.  This characterization of the facts, however, is a little too narrow to harmonize with the record.  More accurately, Ms. Cuadra's counsel argues that because Ms. Cuadra allegedly discharged his firm from one claim in this litigation, his firm is discharged from its entirety.  Ms. Cuadra and her counsel apparently dispute whether she originally hired counsel to prosecute her termination claims, but the Court need not resolve this dispute.  More importantly, Ms. Cuadra's counsel offers no case law to support his assertion that discharge from one claim *mandates* withdrawal on all other claims.  Ms. Cuadra's counsel still represents her on all the other claims that survived summary judgment.  The Court sees no reason why, pursuant to RPC 1.16(b)(3), counsel must withdraw when there are still viable claims in this case and where, had the same termination claim died in summary judgment, he would still be expected to proceed as counsel.

Accordingly, the Court finds no basis for mandatory withdrawal of counsel.

### 2. Permissive Withdrawal

Regarding permissive withdrawal, Cuadra's counsel argues "essentially the same reasons as outlined above."  (Withdrawal Br. at 11.)  As a threshold concern, however, counsel cites to an older version of RPC 1.16, which creates some confusion as to what counsel argues.  In 2004, the

---

H'rng Tr. 4:23-8:9).

New Jersey Supreme Court amended 1.16(b) in two pertinent ways, and the Court briefly reviews

them to clarify counsel's arguments.  See generally Kevin H. Michels, New Jersey Attorney

Ethics § 16:3, at 358 (2012 ed. 2011).

First, the Supreme Court renumbered subsection (b) to make it clear that there were two

categories of permissive withdrawal: (1) withdrawal without adverse material effect on the client,

and (2) withdrawal for "good cause" notwithstanding an adverse material effect on the client.

See Pollock Commission Cmt. to RPC 1.16, reprinted in Michels, supra, App. A1, at 1216.

Withdrawal without adverse material effect became (b)(1), and the "good cause" reasons became

(b)(2) through (b)(7).  Here, counsel quotes what is now subsection (b)(1) but does not argue it or

cite to it.  (See Withdrawal Br. 10–11.)  Instead, he cites and argues two "good cause" reasons for

permissive withdrawal, namely (b)(4) and (b)(7).  (See id.)  Thus, to be clear, Ms. Cuadra's

counsel does not argue that "withdrawal can be accomplished without material adverse effect on

the interest of [Ms. Cuadra]" and accordingly, the Court need not analyze RPC 1.16(b)(1).

Second, Ms. Cuadra's counsel cites to an older version of subsection (b)(4), formerly

(b)(3), that used to permit withdrawal if "(3) a client insists upon pursuing an objective that the

lawyer considers repugnant **or imprudent**."  RPC 1.16(b)(3) (2003) (emphasis added).  Now,

however, the rule states that withdrawal is permissive if "(4) the client insists upon taking action

that the lawyer considers repugnant **or with which the lawyer has a fundamental**

**disagreement**."  RPC 1.16(b)(4) (emphasis added).  The Pollock Commission, which

recommended the adopted change to this rule, explained that

> The rationale for the change is that allowing a lawyer to withdraw when the
> lawyer believes that the client's objectives or intended action is "imprudent"
> permits the lawyer to prevail in almost any dispute with a client by threatening to

> withdraw.  That practice detracts from the client's ability to direct the course of the representation.  Nevertheless, a lawyer should be permitted to withdraw when the disagreement over objectives or means is so fundamental that the disagreement threats the lawyer's autonomy.

Pollock Commission Cmt. to RPC 1.16.  Accordingly, the Court considers counsel's RPC 1.16(b)(4) arguments with this in mind.  In addition to RPC 1.16(b)(4), Ms. Cuadra's counsel also argues that "other good cause for withdrawal exists" under subsection (b)(7).  The Court will address each of counsel's arguments in turn.

Under RPC 1.16(b)(4), the Court is unpersuaded that Ms. Cuadra is pursuing an objective that is either repugnant or the subject of a fundamental disagreement.  Ms. Cuadra's counsel argues that "it would not be prudent" for his firm to continue representation given Ms. Cuadra's demeanor to counsel, her disagreement with his legal advice, and her decision to seek other counsel to pursue her second EEOC complaint.  (Withdrawal Br. at 11; Mark Non-Privileged Decl. ¶¶ 2, 7–8.)  As noted above, however, imprudence is no longer the standard.  Moreover, this case illustrates the rationale that, if imprudence were the standard, an attorney could "prevail in almost any dispute with a client by threatening to withdraw" and thereby "detract[] from the client's ability to direct the course of the representation."  Pollock Commission Cmt. to RPC 1.16.  Ms. Cuadra made it clear at the hearing for this motion that it is very important to her to have her day in court,[3] but that she did not want to pursue claims from her second EEOC complaint in this case.  The record demonstrates that she raised this issue with her counsel at

---

[3] The Court notes that Ms. Cuadra made this representation during the sealed portion of the March 12, 2012 hearing.  The Court finds that this representation does not fall within the gamut of attorney client privilege.  To whatever extent it does, the Court further finds that the right of the public to understand this Court's decision outweighs Ms. Cuadra's interest in protecting this particular representation from disclosure.

least as far back as March 2011.  (See, e.g., Mark Non-Privileged Decl. ¶¶ 4–5.)  Her counsel

disagrees with this course of action.  (See, e.g., id. ¶ 8 ("[T]here has become a complete

disagreement, lack of understanding, and lack of willingness by the Client to accept Counsel's

legal advice on the legal, factual, procedural and resolution of this matter, which has caused

serious problems in pursing [sic] the claims and trying to resolve the case in the client's best

interest.")  But as RPC 1.2 makes clear, the client controls the scope and objectives of

representation.

    Although plaintiff's counsel does not appear to argue that plaintiff seeks a "repugnant"

objective or course of action, see Withdrawal Br. at 11, the Court considers it for the sake of

completeness.  As noted above, the record before the Court demonstrates that Ms. Cuadra and

her counsel have a dispute over the original scope of representation, but it does not conclusively

demonstrate that she asked counsel to engage in an offensive course of action, nor does it

demonstrate that she will be able to force counsel to violate an RPC in the future.  And,

obviously, there is nothing repugnant about Ms. Cuadra wanting to have her day in court, nor her

exercise of her discretion to limit the scope of representation.

    For related reasons, the Court does not find that there is a "fundamental disagreement"

over the objectives or means such it threatens counsel's autonomy.  See Pollock Commission

Cmt. to RPC 1.16.  As discussed above, Ms. Cuadra's objective is to have her day in Court on

her remaining claims, she has exercised her control over the scope of her claims, and she cannot

force counsel to break his ethical code.  Accordingly, the Court finds that, even though counsel

may disagree with certain of Ms. Cuadra's decisions, counsel's autonomy perseveres.[4]

Under RPC 1.16(b)(7), the Court is also unpersuaded that other good cause for withdrawal exists.  Counsel argues that Ms. Cuadra treats him so poorly that "there is no reason why [he] should be forced to continue representing [her] . . . ."  (Withdrawal Br. at 11–12.) Counsel argues that she is disrespectful and no longer has confidence in his ability as a lawyer. (See, e.g., id.; Mark Privileged Decl. ¶ 48.)  Notably, counsel provides no case law to support his assertion that these reasons demonstrate good cause.  Moreover, the Court has reviewed Ms. Cuadra's statements, and cannot find that they present good cause.  Certainly, the statements presented to the Court do not demonstrate an ideal working relationship and some of them clearly signal Ms. Cuadra's periodic discontent with her counsel.  But they are neither verbally abusive nor physically threatening.  And as Ms. Cuadra made clear at the hearing for this motion, as she did during the December 13, 2011, hearing, she does not wish to terminate counsel from this case.  This Court's observation in Rusinow, is instructive: "[a] sudden disenchantment with a client or a cause is no basis for withdrawal.  Those who cannot live with risk, doubt and ingratitude should not be trial lawyers.  A lawyer's duty to his or her client cannot be sacrificed to ambivalence."  Rusinow, 920 F. Supp. at 72.  In short, RPC 1.16(b)(7) requires more than difficult client interactions before counsel may be relieved of his obligation to see a case through to resolution.

Finally, accessory to this entire analysis is the prior representation of Ms. Cuadra's

---

[4] Further, although plaintiff and her counsel may disagree about the handling of the termination-related claims, the Court cannot overlook the fact that there remain claims, such as for discrimination and hostile work environment, for which there is no suggestion of a fundamental disagreement between plaintiff and her counsel.

counsel, which further persuades the Court that denial of this motion is appropriate.  During the December 22, 2010 telephone conference, there was no dispute that the claims from the second EEOC complaint, i.e., the termination-related claims, were not part of this case.  Counsel on both sides were close to agreeing to a proposed consent order that would have preempted evidentiary motion practice.  The only dispute concerned language that would have clarified whether the termination claims were originally part of this case (and withdrawn) or never part of this case to begin with.  As stated above, such a clarification has no effect on whether these claims are currently part of this case.  The Court questioned Ms. Cuadra's counsel about this dispute, and in response, Ms. Cuadra's counsel stated to the Court, "Judge, I understand absolutely what you are saying and I am prepared to proceed with whatever happens."  A week later, Ms. Cuadra's counsel asked to withdraw.  No where in Ms. Cuadra's counsel's motion to withdraw does he mention this statement, let alone reconcile it.  All of counsel's argument and evidence on this motion focused on the forty weeks before he was "prepared to proceed with whatever happens" on December 22, 2011.  Accordingly, the Court finds no reason why counsel cannot proceed in this case.

For all these reasons, the Court simply cannot find that the RPCs either require or permit counsel to withdraw on this record.

**C. Other factors**

Even if counsel had provided good cause to withdraw, the other factors weigh against granting this motion.  The prejudice that withdrawal would cause to the parties, the harm to the administration of justice, and delay of resolution of this case all demonstrate that the Court should exercise its discretion under RPC 1.16(c) to order Ms. Cuadra's counsel to continue

17

representing her.

Discovery and dispositive motion practice are over, and the case is very nearly ready for trial.  Moreover, the recent delays in this case are self-inflicted.  As the docket demonstrates, the Court originally planned to hold the final pretrial conference more than a month ago.  (See Order, Nov. 29, 2011, ECF No. 70.)  Granting this motion will only exacerbate that delay.  As Ms. Cuadra herself has stated during the hearing for this motion, she does not want to relieve counsel because of the advanced stage of this litigation.[5]  Thus, the advanced stage of this case supports denying the motion.  See Amboy Bancorporation v. Jenkens & Gilchrist, Civ. No. 02-5410, 2008 WL 4542469, at *2 (D.N.J. June 26, 2008).

Relatedly, if the motion were granted, the Court does not find that Ms. Cuadra would be able to effectively proceed *pro se*, at least without further lengthy delay.  This litigation has been ongoing for well over two years, involves an extensive factual and procedural history, and required substantial discovery.  To require plaintiff, who has been relying on her counsel throughout that entire time, to stand in the shoes of her counsel at this very late date would, at a minimum, produce unmanageable delays and burden for the parties and the Court.

Similarly, the prospect of Ms. Cuadra obtaining new counsel at this time is remote at best.  Her present counsel suggests that thirty days might be long enough for her to find replacement counsel (see Mark Privileged Decl. ¶ 49), but the Court thinks that prediction rather unlikely.  In the twelve months since Ms. Cuadra informed her counsel that he was not representing her on the

---

[5] The Court notes that Ms. Cuadra made this representation during the sealed portion of the March 12, 2012 hearing.  Like certain other representations, the Court finds that this representation does not fall within the gamut of attorney client privilege, and to the extent it would, the right of the public to understand this decision outweighs Ms. Cuadra's interest in protecting it from disclosure.

termination claims, including the nearly three months since plaintiff's counsel first moved to withdraw, she has not found substitute counsel.

Even if plaintiff could find new counsel, the delay would be much longer, as new counsel would have to familiarize himself or herself with a factual and procedural background spanning nearly seven years.  Moreover, this case has been litigated since 2009, and the current counsel is uniquely aware of the facts, documents, and legal issues of Ms. Cuadra's case.  Thus, if the motion were granted, not only would Ms. Cuadra's objective to have her day in court be substantively thwarted, but the defendants would lose their right to have this matter resolved in a timely manner.  Other courts have denied the motion to withdraw when the record demonstrated similar concerns.  See, e.g., Rusinow, 920 F. Supp. at 71–72 (denying claim to withdraw on eve of trial when effective substitute could not be timely found); Haines, 814 F. Supp. at 425–426; Amboy, 2008 WL 4542469, at *2; McKowan Lowe, 2005 WL 6269793, at *2; Land's End, 220 B.R. at 235–36.

Accordingly, even if withdrawal were appropriate, "other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency."  Haines, 814 F. Supp. at 423.  Thus, the Court also exercises its discretion under RPC 1.16(c) to order Ms. Cuadra's counsel to continue representing her notwithstanding any good cause he may have demonstrated.

**D. Charging Lien**

Because the Court has denied the motion to withdraw, Ms. Cuadra's counsel's request for a charging lien is moot as he will continue to represent her.

**E. Sealing**

The First Amendment and the common law secure the public and the press a presumptive right of access to judicial proceedings.  Publicker Indus., Inc. v.Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).  Such a right antedates the Constitution and is "beyond dispute."  Littlejohn v. Bic Corp., 851 F.2d 673, 677–78 (3d Cir. 1988).  The bulwarks of this right are "historical experience and social utility."  Id. (quoting United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)); accord Richmond Newspapers, Inc., v. Virginia, 448 U.S. 555, 575–81 (1980) (reviewing the historical perspective and noting the First Amendment's "common core purpose of assuring freedom of communication on matters relating to the functioning of government").  Public access promotes public confidence and respect for the judicial process, enhances the fact-finding process and safeguards its integrity, and helps assure the public that judges act honestly and knowledgeably.  In re Cendant, 260 F.3d 183, 192 (3d Cir. 2001) (citing Littlejohn, 851 F.2d at 678, and Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir.1993)); Publicker, 733 F.2d at 1070.[6]

The right of access extends beyond "the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records."  Littlejohn, 851 F.2d

---

[6] As the Court of Appeals for the Third Circuit has stated:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.  As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud.  Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

Littlejohn, 851 F.2d at 678.

at 678 (citing <u>United States v. Criden</u>, 648 F.2d 814, 819 (3d Cir.1981)).  A document is a

"judicial record" when it has "been filed with the court, or otherwise somehow incorporated or

integrated into a district court's adjudicatory proceedings."  <u>United States v. Wecht</u>, 484 F.3d

194, 208 (3d Cir. 2007) (quoting <u>In re Cendant</u>, 260 F.3d at 192 (internal quotation marks

omitted) (alteration in <u>Wecht</u>).  Notable exceptions, however, are discovery motions and

materials attached to those motions.  <u>Leucadia</u>, 998 F.2d at 163–65; <u>accord</u> <u>Wecht</u>, 484 F.3d at

209.  Thus, judicial records include pleadings, evidence, transcripts, non-discovery pretrial

motions, and materials in support of such motions.  <u>See</u> <u>Wecht</u>, 484 F.3d at 208–09.  Judicial

records also include, to some extent, transcripts of sidebar conferences and <u>in</u> <u>camera</u>

proceedings.  <u>See</u> <u>In re Cendant</u>, 260 F.3d at 192–93 (<u>in</u> <u>camera</u> proceedings); <u>United States v.</u>

<u>Smith</u>, 787 F.2d 111, 114–115 (3d Cir. 1986) (sidebar conversations).

      The right of public access, however, is not absolute and the presumption of access may be

rebutted.  <u>In re Cendant</u>, 260 F.3d at 194.  "Every court has supervisory power over its own

records and files, and access has been denied where court files might have become a vehicle for

improper purposes."  <u>Littlejohn</u>, 851 F.2d at 678 (quoting <u>Nixon v. Warner Commc'ns, Inc.</u>, 435

U.S. 589, 598 (1978)).  A party seeking to close a hearing or seal a judicial record bears the

heavy burden to demonstrate that the material is of a sort that is protectable and that "disclosure

will work a clearly defined and serious injury to the party seeking closure."  <u>In re Cendant</u>, 260

F.3d at 194 (citing <u>Miller v. Indiana Hosp.</u>, 16 F.3d 549, 551 (3d Cir. 1994)).  As to allegations

of injury, "specificity is essential," and general allegations "bereft of specific examples or

articulated reasoning" will not do.  <u>In re Cendant</u>, 260 F.3d at 194.  The Court then balances the

strong presumption of access against compelling countervailing interests to determine whether

the interest in secrecy outweighs the presumption.  Id. (citing Leucadia, 998 F.2d at 165).  In

other words, "the record before the trial court must demonstrate an overriding interest based on

findings that closure is essential to preserve higher values and is narrowly tailored to serve that

interest."  Publicker, 733 F.2d at 1070 (citations and internal quotation marks omitted).  If

sealing is deemed appropriate, the Court "must both articulate the countervailing interest it seeks

to protect and make findings specific enough that a reviewing court can determine whether the

closure order was properly entered."  Id. at 1070 (citations and internal quotation marks omitted).

Local Civil Rule 5.3 codifies the standard for sealing materials in this district.  See L.

Civ. R. 5.3(a).  Under subsection (c)(2), the party seeking to seal or otherwise restrict public

access must file a motion that describes

> (a) the nature of the materials or proceedings at issue,
> (b) the legitimate private or public interests which warrant the relief sought,
> (c) the clearly defined and serious injury that would result if the relief sought is
> not granted, and
> (d) why a less restrictive alternative to the relief sought is not available.

L. Civ. R. 5.3(c)(2).  In addition, the movant must submit proposed findings of fact and

conclusions of law.  Id.  If the Court determines that sealing is warranted and that no less

restrictive alternative available, the Court's order or opinion "shall include findings on the factors

set forth in (c)(2) above as well as other findings required by law."  L. Civ. R. 5.3(c)(5).

Here, Ms. Cuardra's counsel seeks to seal certain portions of his brief and declaration

supporting this motion.  He asserts that the proposed sealed portion contain direct references to

attorney-client communications as well as his mental impressions during the course of

22

representation.  (Mark Sealing Decl. ¶ 3, Jan. 11, 2012, ECF No. 80.)[7]

Upon reviewing the material that Ms. Cuadra's counsel seeks to seal, the Court has

determined that it consists of actual communications between Ms. Cuadra and her counsel, the

substantive content of actual communications between them, and the mental impressions of Ms.

Cuadra's counsel.  Ms. Cuadra's privilege to attorney-client communications and her counsel's

attorney work product are certainly legitimate interests to protect.  Cf. Emmanouil v. Roggio,

Civ. No. 06-1068, 2008 WL 1790449, at *6–7 (D.N.J. Apr. 18, 2008) (considering whether

certain communications could be sealed because of attorney-client privilege).  Disclosure of

these communications or work product will cause a clearly defined and serious injury by

revealing to the other parties those discussions or product that Ms. Cuadra would reasonably

believe to protected from disclosure.  The public's interest — i.e., access to the Court's reasoning

on this matter — is largely protected by providing the legal and factual bases embodied in this

Opinion without delving so deeply into protected materials that Ms. Cuadra's privilege or her

counsel work product would be compromised.  Relatedly, a less restrictive alternative is not

available because to delve deeper would compromise the privileges at stake.

To the extent that the Court has relied upon information that counsel proposes to seal, the

Court has so noted in this Opinion.  And the Court further finds that this information is not

properly subject to sealing.  For example, relying on paragraph seventeen of Mark's Redacted

---

[7] Ms. Cuadra's counsel also asserts that the redacted portions do not "relate in any way" to the defendants, the claims in this case, or the defenses in this case.  (Mark Sealing Decl. ¶ 6.)  Relevance as to the merits of a claim, however, is not a consideration regarding seal, and counsel provides no law stating otherwise.  What matters is the information that a party injects into the record and asks the Court to consider in requesting relief, regardless as to whether the information concerns the ultimate merits of the case.  A Court balances the disclosure of the information it considers in granting relief with the harm of disclosure.  Accordingly, the Court does not consider relevance in its sealing analysis.

Declaration, Ms. Cuadra notified her counsel in early March 2011 that she had received her second right-to-sue letter and that she would be seeking new counsel to assist her on that claim in a separate law suit.  (Mark Privileged Decl. ¶ 17.)  Counsel seeks to seal paragraph seventeen, but he has stated this fact during oral argument for summary judgment and otherwise on the record on multiple occasions.  This paragraph is not protected by privilege because (among other reasons) this information has long since been in the open record of the Court.  Thus, no legitimate basis warrants sealing this information.  See Emmanouil, 2008 WL 1790449, at *7.

IV.   **CONCLUSION**

For the reasons above, the Court DENIES the plaintiff counsel's motion to withdraw as counsel.  An Order consistent with this Opinion will follow.

s/ *Michael A. Hammer*
United States Magistrate Judge

Date: April 4, 2012

24